Filed 12/11/14  P. v. Paez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

:

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066376 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1201409) |
| MICHAEL ANGEL PAEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Michael J. Rushton, Judge.  Affirmed.

Steven J. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Meagan J. Beale and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

The Riverside County District Attorney's Office filed an information charging Michael Angel Paez with five felony counts of committing lewd and lascivious acts upon

a child under the age of 14 in violation of Penal Code[1] section 288, subdivision (a) (hereafter section 288(a)) (counts 1-5).  The information alleged that Paez committed each offense "on or about January 1, 2011 through and including January 2012."

During the jury trial, after the People rested their case-in-chief, the court dismissed count 5 after granting a defense motion for acquittal as to that count under section 1181.1.  The jury later found Paez guilty of the four remaining child molestation counts.  The court sentenced him to a total state prison term of nine years.

Paez appeals, contending (1) the court prejudicially erred "when it considered the evidence to be generic," rather than specific, and when it thereafter instructed the jury under CALCRIM No. 3501—the standard unanimity instruction that is used when generic testimony is presented—that unanimity would be satisfied "if the jury unanimously agreed as to the number of instances [of] lewd touching," and (2) the court erred in denying his section 1118.1 motion for acquittal as to count 4 because that count was based on a statement made by the victim following suggestive questioning by the forensic examiner, and the evidence was insufficient to sustain a conviction as to that count at the close of the People's case-in-chief because it was not reasonable, credible, or of solid value.

For reasons we shall explain, we conclude the court properly instructed the jury under CALCRIM No. 3501, and it did not err in denying Paez's motion for acquittal as to count 4.  Accordingly, we affirm the judgment.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

## FACTUAL BACKGROUND[2]

A. *The People's Case*

The victim was between five and six years of age when the alleged molestations occurred, and she was seven years old at the time of trial in this matter.

Hector B., the victim's father, testified that he and Paez are cousins. Hector has two other minor children—J. (the victim's brother) and D. (the victim's sister)—and he is married to Maria B., who is the victim's mother. Paez would visit Hector and his family at their home about once or twice a week. Sometimes he would stay there overnight and sleep in either the living room or in J.'s room.

Hector also testified that, on January 26, 2012, while he was watching a YouTube video for an upcoming trip to Disneyland, the victim, who was then six years of age, approached him and said, "[D]ad, I don't want [Paez] to go to Disneyland with us." Hector asked her why, and she told him that Paez had been touching her in the living room, the kitchen, and J.'s bedroom room. Hector called Paez and told him what the victim and said. On January 28, 2012, two days after the victim disclosed what had happened, Hector called the police to report the molestations.

Maria testified that Hector called her at work and told her the victim had told him that Paez had been touching her. Maria immediately went home and spoke to the victim. The victim told her that Paez would be "mad" if she told her mother what had been

---

2    In light of the court's dismissal of count 5 under section 1118.1, the facts related to that count are not included in the following summary of the factual background in this case.

happening. After Maria reassured the victim that she was there to "protect" and "take care of her," the victim told her that Paez "would touch her butts." When Maria asked her what she meant by "butts," the victim placed her hand under her underwear in the front to indicate where Paez had been touching her. The victim reported to Maria that the molestations happened at their home in the kitchen, the living room, and her brother J.'s room. The victim was crying and she was upset and afraid when she told Maria about the molestations.

Officer Scott Burden, the lead investigator for the Riverside County Sheriff's Department, testified that he referred the case to the Riverside County Child Assessment Team for a forensic interview.

On April 19, 2012, Araceli Martinez, a child forensic interviewer with Riverside County Child Protective Services, interviewed the victim. The video-recorded interview was played for the jury and admitted into evidence. The victim used the word "butt" to identify her vagina and also said that "the butt was where the 'peep' comes out." The victim described her anus as her "bottom" and indicated it is where the "poop" comes out of the body. Martinez testified that the victim said Paez would touch her because she "was pretty and stuff " and because he wanted "to be with her." The victim reported that Paez "touched" her multiple different times and that these incidents occurred in her home, in the kitchen, in her brother's bedroom, in her bedroom, and in the living room.

The victim testified that Paez had touched her underneath her clothing with his hand, on her "bottom" and "in the front".

4

*Count 1*: *Allegation of molestation in the living room*

The victim testified she was lying with Paez on the couch in the living room of her house when he touched her both "in the front" and in the "back." During the interview, she reported that she was in the living room of her home watching a movie with her mother, father, and Paez. The victim was under a blanket on the couch. The touching began when the victim's father left his position on the rocking chair and went to sleep on the floor, and her mother moved from the couch to the rocking chair. Paez removed the victim's socks. The victim said that Paez's hand touched her "[u]nder [her] pajamas." She explained that Paez was "touching" her "in [her] butt" and on her "bottom." She also stated that Paez's "nail" was "[l]ike touching [her] bottom . . . [and] it was hurting a lot." Paez told the victim, "[D]on't tell your parents or I['ll] get mad at you." The victim reported that this molestation stopped when she went to the bathroom and sat "right next to [her] mom" upon her return to the living room.

*Count 2*: *Allegation of molestation in the victims's brother's bedroom*

The victim also reported to Martinez that Paez "touched" her in her brother's bedroom. The victim reported to Martinez, and also testified, that she and Paez were on her brother's bed when Paez touched her "in the front" and "back." The victim's mother and father, younger sister, brother, and her Uncle Jay also were in the bedroom when it happened. The victim stated that nobody saw what Paez was doing to her. The victim explained to Martinez that when Paez molested her, she "was right there laying [*sic*] down under [her] blanket sleeping on [her] brother's blanket." Paez "touched" her "bottom" and her "front." He touched the victim's "front" with his hand underneath her

5

underwear and, he also touched the "inside of [her] butt" with his hand, which she said "hurts a lot."

The victim also told Martinez that, as Paez was leaving, he hugged her and said, "[G]o on top of me." The victim complied, and Paez instructed her to "wiggle [her] butt on him." The victim explained that, "after [she gave Paez] a hug[,] he said, ['G]ive me your clean chones [(underwear),] but [she gave] him [her] dirty chones."

When asked why the touching of her "front" stopped, the victim told Martinez, "He stopped touching [(her "front")] and being with [her] mommy and daddy."

*Count 3*: *Allegation of molestation in the kitchen*

The victim testified, and reported to Martinez, that on another occasion she was reading at the kitchen table when Paez touched her over her clothing. During this incident, Paez told the victim to "come here" and give him a hug. The victim explained that "he said wiggle, wiggle and he was touching getting his hand in there when he was hugging me." When asked what she would wiggle, the victim said her "butt" and "bottom." When asked what Paez was doing when she was wiggling, the victim told Martinez, "He was wiggling because—because he want[ed] me to be with him every day."

*Count 4*: *Allegation of molestation in the victim's bedroom*

The victim also reported that Paez molested her in her own bedroom. Paez had spent the night at the victim's home and slept in the victim's bedroom. The victim said her father was at the store when Paez was "touching" her "everywhere." She stated that

6

Paez touched her on her "bottom" over her pajamas and also touched her "leg." She also stated the touching stopped because she was "following [her] mom."

*Expert testimony*

Jody Ward, a clinical and forensic psychologist who acknowledged she did not review any police reports related to this case, had never met the victim, and knew nothing about this case, provided expert testimony for the prosecution on child sexual abuse accommodation syndrome (CSAAS). Dr. Ward explained that CSAAS is "a pattern of behaviors that many children exhibit who have been sexually abused," which "helps us understand why children do what they do in response to sexual abuse." The five components of CSAAS are "secrecy, helplessness, entrapment as accommodation, delayed unconvincing disclosure, and retraction."

When asked whether she had "ever seen cases where sexual abuse occurs even though there may be people in the same room," Dr. Ward responded, "Yes, it could be happening on a couch where other people are behind the couch. I've heard of it happening where the person being abused thought they were in plain sight of other people in the home when they maybe probably weren't or in another room of the house or in adjoining rooms. So, yes, it does happen very often within the home and right under the nose [*sic*] of other people living there."

Dr. Ward explained that "[w]hen children do disclose sexual abuse, they tend to disclose it very tentatively. They tend to test the waters. So the children are just like adults. [¶] When adults have something that they need to tell someone else that they are afraid they are going to be rejected or they are afraid to make a negative disclosure to

7

someone else, they may test the waters by telling just a little bit about what happened. And if that child or the adult, even as that goes, gets a positive response or a response that's not negative, then a child may feel more . . . comfortable to disclose sexual abuse more and more over a period of time."

Dr. Ward also stated that "it would be very rare for a child to walk up to an adult or anyone and say I've been sexually abused. This happened. This happened. This happened and tell the entire[,] think of everything that happened on the first disclosure. That's just not how kids and/or people disclose painful negative things about themselves. [¶] So it usually takes place over a period of time as the child becomes more comfortable with the disclosure and also as the child becomes more comfortable with the person that they are disclosing the sexual abuse to." Dr. Ward noted that if the person hearing the disclosure "picks up that there may be something wrong and says what do you mean, and the child tells a little bit more, and the person is open to disclosure of sexual abuse, the child does tend to disclose more sexual abuse."

B. *The Defense*

*Paez's testimony*

Testifying in his own defense, Paez stated that he has a spinal cord injury, he has walked with a cane since 1987, and he is on disability. Hector is his cousin, he has known the victim all her life, and he would visit Hector and his family at their home once or twice a week, usually for a couple of hours and mainly to see Hector. Sometimes he would spend the night there.

8

Paez indicated he had never been alone with the victim, he had never done anything of a sexual nature to her, he had never touched her vaginal area, and he had never touched her for sexual gratification.

Paez attempted to explain away each of the molestation allegations. As to the allegation that he molested the victim in the living room (count 1), Paez acknowledged there was a time when he was in the living room of Hector's home watching a movie with Hector and Maria when the victim and her sister came into the room and sat on the couch next to him with a blanket. The victim sat next to Paez on his left side and her younger sister sat next to him on his right side. Paez used a blanket to cover both girls and his legs, but not his arms. Paez testified that his left leg was fractured and in a cast, and the victim was pushing on his cast in an attempt to take over the couch. In response, Paez pushed her away from him by touching her "foot or something" because he wanted to be comfortable and fall asleep. He denied that anything about this touching was sexual in nature. He testified that she looked at her mother, got up, and went to sleep on the floor. On cross-examination, Paez admitted that he told a police officer he had massaged the victim's feet, but he had not kissed them.

As to the allegation that he molested the victim in her brother's J.'s bedroom (count 2), Paez acknowledged that he was in the room watching a movie with his brother, Jay, the victim, and her father, sister, and brother. Paez was sitting on the bed with the victim and her sister. He testified that when the victim and her sister entered the room they jumped on the bed, the victim jumped on his leg, which was in a cast, and he "couldn't support her with [his] cast, so it hit the ground pretty hard." Paez testified he "grabbed"

9

the victim "too hard" by reaching around her and touched her back and her bottom.  On cross-examination, Paez testified that he pushed her away from him on the bed by touching her bottom.

Paez acknowledged that, when the police questioned him about a time when something happened with some underwear, he immediately knew what the officer was referring to.  Paez denied ever asking the victim for any item of dirty clothing, but admitted that there was an instance when the victim and her sister were playing with the laundry, and the victim's sister threw "dirty underwear" at his face.  He testified that, as the girls left the room, the victim dropped a pair of underwear, Paez told her to pick them up but she did not do it, so he grabbed the underwear and tried to give them to the victim's sister, but she "took off," and he then "dropped the underwear."

As to the allegation that he molested the victim in the kitchen area (count 3), Paez testified about an occasion when found the victim on top of the dining room table.  He stated that her father had told her to get off of the table, but she did not get off of it.  After the victim's father left the room, Paez testified that he placed one arm on the table to steady himself and "with the other arm [he] told her to come down, so she put her arms around [his] neck.  [He] put [his] arm around her.  [He] brought her down, and [he] didn't want to just let her go.  [He] slid her down the side of [his] body.  [He] let her go."  Paez also testified that he placed his right hand on her "bottom just to support her" because he "wanted to have a better grip and hold her better with [his] arm."

10

Paez denied the allegation in count 4 that he molested the victim in her bedroom. He acknowledged that he had been in the victim's bedroom twice and he had slept in her bed once, but he testified that he was never alone with her in her bedroom.

*Other defense evidence*

Paez's brother, Felipe (Jay) Paez, and the victim's brother also testified for the defense. Both witnesses said they never saw Paez touch the victim inappropriately.

The defense also presented the expert testimony of Mitchell Eisen, a psychologist with expertise in children's memory and suggestibility. Dr. Eisen testified he has a bachelor's degree from the University of New Mexico, a master's degree from the University of Chicago, and a Ph.D. in psychology from the University of Miami. He is familiar with the Thomas Lyon 10-step investigative interview protocol. Dr. Eisen testified about the importance of a forensic interviewer's establishing what Dr. Lyon refers to as "truth-lie competence," particularly with very young children. When truth-lie competence is not established by the interviewer, the results of the interview have questionable reliability, and this is especially true with young children.

Dr. Eisen also testified about the problem of suggestive language and leading questioning, including the problem that arises from repeating questions. This sends a signal to young children that their first answer was not adequate. Dr. Eisen also discussed research showing how deference of young children to adult interviewers contributes to suggestibility.

11

## DISCUSSION

### I.  *CALCRIM NO. 3501*

Paez contends the court prejudicially erred "when it considered the evidence to be generic," rather than specific, and when it thereafter instructed the jury under CALCRIM No. 3501 (discussed, *post*)—the standard unanimity instruction that is used when generic testimony is presented in a prosecution—that unanimity would be satisfied if (he asserts) "the jury unanimously agreed as to the number of instances [of] lewd touching."  We conclude the court properly instructed the jury under CALCRIM No. 3501, rather than under the alternative unanimity instruction—CALCRIM No. 3502 (discussed, *post*)—as the defense requested.

#### A.  *Background*

During the jury instructions conference outside the presence of the jury, the court told the prosecutor and defense counsel that a unanimity instruction needed to be given, CALCRIM No. 3501 was "the best instruction," and it had "modified it to conform to the proof in this case."  The court decided, and both the prosecutor and Paez's counsel agreed, that one of the three available unanimity instructions, CALCRIM No. 3500, should not be given because (as the court found) "there is a lack of clarity that [the jurors] need to have unanimity on each count."

Observing that both of the other two available unanimity instructions—CALCRIM Nos. 3501 and 3502—"[were] good," the court indicated it was inclined to give a modified version of CALCRIM No. 3501.  The court stated, "I think [CALCRIM No.

3501] is broader and easier for you folks to argue, less specific. I think I run into less chance of error in giving [CALCRIM No. 3501]."

The prosecutor agreed that the court should give a modified version of CALCRIM No. 3501, stating: "I think that's the most appropriate since we have multiple counts." Defense counsel disagreed, stating, "I like [CALCRIM No. 3502]."

Following further discussion, the court stated that the use note for CALCRIM No. 3502 says "if the prosecutor has elected a specific factual basis for the offense alleged, but evidence of multiple acts has been admitted, the Court has [a] sua sponte duty to instruct on the election, unless the prosecutor informs the jury of the election." Noting that "[t]hat probably is not a mirror of the situation we have here," the court then stated:

> "[T]he situation we have here does seem to be precisely covered by [CALCRIM No.] 3501 which allows the jury to let the record reflect between option one or two. Option one, you all agree that the People have proved the defendant committed at least one of these acts and you all agree on which act he committed for each offense.
>
> "[O]r two, you all agree the People have proved the defendant committed all the acts alleged to have occurred during the time period and have proved that the defendant committed at least the number of offenses charged.
>
> "I think that works. I'm more comfortable with [CALCRIM No.] 3501. . . . [M]y intention . . . is to give [CALCRIM No.] 3501."

The prosecutor submitted to the court's ruling. Defense counsel stated, "I prefer [CALCRIM No.] 3502." The court then asked Paez's counsel, "[D]o you have any belief or argument that [CALCRIM No.] 3501 is legally incorrect?" Counsel replied, "I don't at this time, your Honor." The court told defense counsel he could research the issue over the weekend and inform the court on Monday of any authority he wished to bring to the

13

court's attention. On Monday defense counsel told the court, "I did review the case law. I'm just going to submit on that, your Honor."

During her closing argument, the prosecutor informed the jury that "[c]ount 1 refers to touching that occurred in the living room";; count 2 referred to the "touching that occurred in Jason's room";; count 3 referred to the touching that occurred in the kitchen; and count 4 referred to the touching that occurred in the victim's bedroom.

*The Court's CALCRIM No. 3501 instruction*

The court thereafter gave the jury the following written unanimity instruction under CALCRIM No. 3501:[3]

> "The defendant is charged with a violation of Penal Code section 288(a), lewd and lascivious act on a child under the age of 14, in counts 1-4, and the lesser included offense of Penal Code section 242, simple battery, in counts 1-3, occurring sometime during the period of January 1, 2011 to January 31, 2012.
>
> "The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless:
>
> "1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense;
>
> "OR
>
> "2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time

---

3    When it instructed the jury on the applicable law, the court informed the jurors it would give them a copy of this instruction (and the other instructions) to use in the jury room during deliberations.

14

period and have proved that the defendant committed at least the number of offenses charged."[4]

During its deliberations, the jury sent the court a note with the following request for clarification: "We would like clarification as to [the] charge[s] [in] counts 1-4[:] '(1.) Living Room (2.) [J.'s] Room (3.) Kitchen (4.) [The victim's] room?'"

After consulting with both parties and obtaining their consent, the court sent the following written response to the jury: "As for the four counts, *each count does pertain to a specific location*. Count [1] involves the alleged conduct in the living room. Count [2] involves the alleged conduct in [J.'s] [r]oom, Count [3] in the [k]itchen, and Count [4] in [the victim's] [r]oom. See [CALCRIM No.] 3501 related to juror unanimity." (Italics added.)

---

[4]     As pertinent here, the written CALCRIM No. 3501 instruction the court gave to the jury for use during its deliberations mirrored the version the court orally gave to the jury when it read the written instruction, with the exception of the last sentence of the instruction. As noted, *ante*, the last sentence in the written instruction provided: "You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; [¶] OR [¶] 2. You all agree that the People have proved that the defendant committed **all the acts alleged *to* have occurred during this time period *and* have proved that the defendant committed at least the number of offenses charged.**" (Emphasis added.)

However, when the court read the instruction to the jury, it misread the last sentence of the written instruction and stated: "You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense. Or you all agree that the People have proved that the defendant committed **all the acts alleged *and* have occurred during this time period, have proved that the defendant committed at least the number of offenses charged**." (Emphasis added.) However, the jury was provided with a copy of the written CALCRIM No. 3501 (discussed, *ante*), which the court instructed it to use during deliberations.

15

The jury later asked for, and was provided with, a read-back of testimony by the victim, Paez, and Paez's brother, Jay. The jury found Paez guilty of all four counts (counts 1-4) of committing a lewd and lascivious act upon a child under the age of 14 (§ 288(a)).

B. *Standard of Review*

In assessing whether jury instructions correctly state the law, we apply the independent (also referred to as the de novo) standard of review. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

"In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights." (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.)

"We presume that jurors are intelligent and capable of understanding and applying the court's instructions." (*People v. Butler* (2009) 46 Cal.4th 847, 873.)

C. *Analysis*

"[T]he requirement of jury unanimity in criminal cases is of constitutional origin." (*People v. Mickle* (1991) 54 Cal.3d 140, 178, citing *People v. Jones* (1990) 51 Cal.3d 294, 321 (*Jones*) & Cal. Const., art. I, § 16.)

Here, as noted, Paez contends the court erroneously found the victim's testimony was generic rather than specific, and then erroneously instructed the jury under CALCRIM No. 3501. In deciding whether the court properly found that the victim's

16

testimony in this child molestation case was generic, rather than specific—and, thus, whether the court properly instructed the jury with the modified version of CALCRIM No. 3501 (discussed, *ante*), rather than under CALCRIM No. 3502[5] as Paez requested—we begin our analysis by noting that "[t]he unanimity rule has been refined in cases involving sexual molestation of children and repeated identical offenses." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 556-557 (*Fernandez*), citing *Jones, supra,* 51 Cal.3d 294.) In *Jones, supra,* 51 Cal.3d 294, the California Supreme Court recognized that "[c]hild molestation cases frequently involve difficult, even paradoxical, proof problems," and that "[a] young victim . . . assertedly molested over a substantial period by [an adult] may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents." (*Id*. at p. 305.) Stating that "even *generic* testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific,* albeit undifferentiated, incidents, each of which amounts to a separate offense, and each of which could support a separate criminal sanction" (*id.* at p. 314, italics added, some italics omitted) the Supreme Court addressed the issue of what constitutes "the minimum quantum of proof necessary to support a conviction on one or more counts based on such generic testimony." (*Ibid*.) In this regard, the *Jones* court explained that, "in determining the sufficiency of generic

---

5       CALCRIM No. 3502 reads: "You must not find the defendant guilty of _____ *<insert name of alleged offense>* [in Count ___] unless you all agree that the People have proved specifically that the defendant committed that offense [on] _____*<insert date or other description of event relied on>*. [Evidence that the defendant may have committed the alleged offense (on another day/ [or] in another manner) is not sufficient for you to find (him/her) guilty of the offense charged.]"

17

testimony, we must focus on factors other than the youth of the victim/witness. Does the victim's failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." (*Id*. at p. 315.)

After an exhaustive review of conflicting case law on the issue, the Supreme Court held in *Jones* that, to establish the substantiality of the victim's testimony in child molestation cases, "three minimum prerequisites" (hereafter the three *Jones* prerequisites) must be satisfied. (*Jones*, *supra*, 51 Cal.3d at pp. 305-313, 321.) First, "[t]he victim . . . must describe the *kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)." (*Id*. at p. 316.) Second, "the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')." (*Ibid*.) Third and last, "the victim must be able to describe the *general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*Ibid*.) The *Jones* court added that "[a]dditional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Ibid*.)

18

Thus, *Jones* explained, if the testimony of the victim in a child molestation case is generic but specifies "the *type of conduct* involved . . . and *its frequency* . . . and confirm[s] that such conduct *occurred during the limitation period,* [then n]othing more is required to establish the substantiality of the victim's testimony." (*Jones, supra*, 51 Cal.3d at p. 316, italics added.)

In *Fernandez, supra*, 216 Cal.App.4th 540, the Court of Appeal recently explained that, "'[i]n a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction [e.g., CALCRIM No. 3500] should be given. [Citation.] But *when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction* [*e.g., CALCRIM* [*No.*] *3501*][6] *which,* in addition to allowing a conviction if the jurors unanimously agree on specific acts, also *allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim.*'" (*Fernandez,* at pp. 555-556, quoting *Jones, supra*, 51 Cal.3d at pp. 321-322, italics added.)

---

6    *Fernandez* explained that "CALCRIM No. 3501 is an alternative instruction [that] affords two different approaches for the jury to reach the required unanimity. The first is the same as that set forth in CALCRIM No. 3500: agreement as to the acts constituting each offense. But unanimity may also be found under CALCRIM No. 3501 if the jury agrees 'that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged].'" (*Fernandez, supra*, 216 Cal.App.4th at p. 556.)

19

*Fernandez* is illustrative. In that case the defendant appealed his convictions of numerous molestation offenses involving two of his granddaughters, contending the trial erred when it instructed the jury with a modified unanimity instruction under CALCRIM No. 3501,[7] rather than with the standard unanimity instruction (CALCRIM No. 3500). (*Fernandez, supra*, 216 Cal.App.4th at pp. 545, 555.) The *Fernandez* court upheld the convictions, concluding that the trial court had properly instructed the jury with CALCRIM No. 3501. (*Fernandez, supra*, 216 Cal.App.4th at pp. 558, 569.) Applying the three *Jones* prerequisites for establishing the substantiality of a victim's testimony in a child molestation case (discussed, *ante*), and noting that one of the two victims "testified about *both specific and generic instances of molestation*" (*id.* at p. 557, italics added), the Court of Appeal reasoned that "[b]oth girls testified about numerous, repetitive molestations which took place over a *defined period of time*. Each described the distinct *types of abuse* to which she had been subjected in sufficient detail, was able to identify the *locations* where it took place, and was able to give a general estimate of the *frequency*

_____

[7]     The trial court in *Fernandez* instructed the jury with the following modified version of CALCRIM No. 3501, which is substantially identical to the version of that instruction given to the jury in this case for use during its deliberations: "The defendant is charged with lewd and lascivious act upon a child under the age of 14 in Counts 3 and 4[.] Count 3 alleges that the act occurred sometime during the period of November 1, 2008 to July 31, 2009. Count 4 alleges that the act occurred sometime during the period of August 1, 2009 to May 15, 2010. [¶] The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts during the relevant time period and you all agree on which act he committed for each offense; [¶] OR [¶] 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during the relevant time period and have proved that the defendant committed at least the number of offenses charged." (*Fernandez, supra*, 216 Cal.App.4th at p. 556.)

of events." (*Ibid.*, italics added.) The *Fernandez* court also stated that the defendant "offered no evidence in his defense that might focus doubt as to any specific act of abuse as distinguished from any other act of molestation. Rather, *his defense was simply that no molestation ever occurred.* Thus, it is unlikely that the jury would have a reasonable disagreement with respect to any particular act or instance of abuse or could reasonably conclude that some of the victims' testimony was true but other parts were not." (*Id.* at pp. 557-558, italics added.) The *Fernandez* court further reasoned that "[t]*he jurors either believed all the acts occurred, or they disbelieved the girls' stories completely.* As *Jones* explains, if it is not reasonably likely that jurors will disagree as to which particular act the defendant committed and the only issue is whether they were committed at all, the jury should be given the modified unanimity instruction contained in CALCRIM No. 3501. This is so because the instruction allows the jurors to convict if they agree unanimously on certain acts or if they unanimously agree the defendant committed all the acts alleged by the victim." (*Fernandez,* at p. 558, citing *Jones, supra,* 51 Cal.3d at pp. 321-322, italics added.)

Applying the foregoing principles to the facts of this child molestation case (discussed, *ante*, in the factual background), we conclude that (1) the victim, like one of the victims in *Fernandez,* testified about both specific and generic instances of molestation; (2) the three *Jones* prerequisites were satisfied in that she "described the distinct *types of abuse* to which she had been subjected in sufficient detail, was able to identify the *locations* where it took place, and was able to give a general estimate of the *frequency of events*" (*Fernandez, supra,* 216 Cal.App.4th at p. 557, italics added); and,

21

thus (3) the court did not err by instructing the jury with CALCRIM No. 3501. (*Jones, supra,* 51 Cal.3d at pp. 321-322; *Fernandez,* at p. 558.) Paez's defense—like that of the defendant in *Fernandez*—"was simply that no molestation ever occurred." (*Fernandez,* at p. 558.) Thus, like the jurors in *Fernandez,* the jurors in this case "either believed all the acts occurred, or they disbelieved [the victim's] stor[y] completely." (*Ibid.*) Accordingly, we conclude the court properly instructed the jury under CALCRIM No. 3501 "because the instruction allow[ed] the jurors to convict if they agree[d] unanimously on certain acts or if they unanimously agree[d] [Paez] committed all the acts alleged by the victim." (*Fernandez,* at p. 558.)

## II. *DENIAL OF PAEZ'S MOTION FOR ACQUITTAL* (*COUNT 4*)

Paez also contends the court erred in denying his section 1118.1 motion for acquittal as to count 4—which, as the prosecutor argued to the jury, charged him with the commission of various lewd and lascivious acts on the victim in her bedroom—because that count was based on a statement made by the victim following suggestive questioning by the forensic examiner, and the evidence was insufficient to sustain a conviction as to that count at the close of the People's case-in-chief because it was not reasonable, credible, or of solid value. We reject this contention.

A. *Background*

At the conclusion of the prosecution's case-in-chief, Paez moved for an acquittal as to counts 4 (charging acts of molestation in the victim's bedroom) and 5 under section 1118.1. Paez conceded that the evidence was sufficient as to counts 1, 2, and 3 for purposes of a section 1118.1 review. Specifically, Paez conceded that the prosecution

22

presented substantial evidence regarding the charged offenses in the living room (count 1), in the victim's brother's room (count 2), and in the kitchen (count 3). Defense counsel argued, "That leaves two additional counts [(counts 4 & 5)] that have been unaccounted for or untestified to." Defense counsel indicated that it appeared from the prosecution's case that count 4 related to the incident described during the forensic interview as a touching in Jane Doe's bedroom, and that count 5 was the incident described by Jane Doe as having occurred in the attic.

The prosecutor acknowledged that multiple touchings of the victim's "bottom" during an incident would not constitute separate section 288(a) offenses for each touching.

The court granted Paez's motion for acquittal as to count 5, the incident that allegedly occurred in the attic. However, the court found sufficient evidence "to move forward on four of the counts [(counts 1-4)], one for each location," stating, "I do find [the victim] is credible.

B.  *Standard of Review*

"In considering whether the trial court erred in failing to grant [a] motion for judgment of acquittal under section 1118.1 [reviewing courts] ask whether 'there is any substantial evidence, including all reasonable inferences to be drawn from the evidence, of the existence of each element of the offense charged.'" (*People v. Watkins* (2012) 55 Cal.4th 999, 1019 (*Watkins*). "When, as here, the motion under section 1118.1 was made 'at the close of the prosecution's case-in-chief, the sufficiency of the evidence is tested as it stood at that point' in the trial [citation]—in other words, *based on the prosecution's*

23

*case alone*, and *without considering the evidence subsequently adduced during the presentation of the defense case* or evidence produced by the prosecution on rebuttal." (*Ibid.*, italics added, fn. omitted)

"In assessing such a claim, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*Watkins, supra,* 55 Cal.4th at p. 1019.)

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless *it is the exclusive province of the* trial judge or *jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends*." (*Jones, supra,* 51 Cal.3d at p. 314, italics added.)

C. *Analysis*

Paez's principal contention is that the court erred in denying his motion for acquittal as to count 4 involving the charged molestation in the victim's bedroom because that count was "the result of a fantasy planted by [forensic interviewer] Martinez'[s] suggestion that there were other times when [the victim] was touched." Specifically, he asserts that, after the victim talked to her "about being touched in the living room, the kitchen and her brother's room[,] Martinez then asked [the victim] to tell her about another time when [Paez] touched her."

We conclude the court properly denied Paez's motion for acquittal as to count 4. The evidence does show that Martinez asked the victim during the forensic interview,

24

"Tell me about another time something happened." When Martinez asked the victim "where [Paez] touched [her]," the victim replied that Paez touched her "at [her] room." When Martinez later asked the victim where Paez touched her when she was in her room, the victim replied that he touched her on her leg and on her "bottom." During closing argument, defense counsel argued to the jury that the victim's testimony about being touched by Paez were "simply fantasies of a young child." He argued there were "[r]ed flags during the interview" because the interviewer, Martinez, was "prompt[ing]" the victim.

As already discussed, "it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." (*Jones, supra,* 51 Cal.3d at p. 314.) Here, Paez's trial counsel vigorously presented to the jury Paez's defense that the victim was not credible because her testimony was the result of "prompt[ing]" by the forensic interviewer. Thus, it was the exclusive province of the jury to determine the victim's credibility. (*Ibid.*) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *Jones*, at p. 314.) Accordingly, we affirm the judgment.

25

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.